## Fox *et al. v.* CADWALADER.

*(Circuit Court, E. D. Pennsylvania.* October 10, 1889.)

1. **CUSTOMS DUTIES — CONSTRUCTION OF ACTS — COMMERCIAL TERMS — PHILOSOPHICAL INSTRUMENTS.**
   Where descriptive words used in the tariff acts are commercial terms, they are to be construed in the sense in which they are used in commerce; and if at the time of the passage of the act of 1883 there was a class of articles defined and well known in the branch of commerce to which they belonged as philosophical instruments, all articles within that class are dutiable under the trade name, as used in said act.

2. **SAME.**
   If the designation "philosophical apparatus and instruments" is not a trade term, then it is to be construed according to the meaning ordinarily given to the words in common speech, and in that sense it includes not merely such instruments as are used in purely scientific investigation or instruction, but all instruments designed to illustrate or utilize certain laws of natural philosophy, and which require for their design or their manufacture or their use some special knowledge of those laws.

3. **SAME — CLASSIFICATION — SPECTACLE LENSES.**
   Disks of glass known as "spectacle lenses," which have been ground or polished for use in spectacles, and which only require to be cut and fitted to the frame, are not exempt from duty as "plates or disks of glass unwrought, for use in the manufacture of optical instruments," but are dutiable as "articles of glass cut, engraved," etc.

4. **SAME — MICROSCOPE SLIDES.**
   Small rectangular pieces of common window glass, used for microscope slides, are dutiable as "common window glass, not exceeding ten by fifteen inches square," and not as "articles of glass cut," etc.

## At Law.

This was an action brought by an importer to recover an alleged excess of duty imposed by the collector. The plaintiffs imported the following articles, which they claimed to be dutiable as "philosophical apparatus and instruments," and which the government claimed to be dutiable as manufactures composed wholly or in part of iron, steel, copper, etc., viz., (1) dynamos, dynamometers, ammeters, volt-meters, milliamperes, and amperemeters; (2) surveying aneroids; (3) clinical thermometers; (4) spy glasses, marine glasses, binoculars, and opera glasses; (5) achromatic lenses, rectilinear lenses, projection lenses, railroad lenses, photographic lenses, and loupes richaud. Plaintiffs also imported glass disks known as "spectacle lenses." These disks had been ground or polished for use in spectacles, but required to be cut and fitted to the frame before forming part of the finished spectacle. Plaintiffs claimed that these were exempt from duty under the provision in the free list for "glass plates or disks unwrought, for use in the manufacture of optical instruments." The collector claimed that they were dutiable as "articles of glass cut," etc. Plaintiffs also imported small rectangular pieces of common window glass used as microscopic slides. The glass had not been subjected to any other process of manufacture than the cutting into sizes. Plaintiffs claim that the articles were dutiable as "common window glass, not exceeding ten by fifteen inches square." The collector contended that they were dutiable as "articles of glass cut," etc. As to the articles claimed to be philosophical instruments considerable evidence was given on both sides on the question whether the term was a

trade term, designating a class of articles dealt in under that commercial classification.

*Frank P. Prichard*, for plaintiffs.

*James M. Beck*, Asst. U. S. Atty., and *John R. Read*, U. S. Atty., for defendant.

BUTLER, J., (*charging jury orally.*)   In view of what was said in your presence this morning, in disposing of questions of law raised by the facts and points, I need not address myself to the law or to the points at this time.

As respects the articles of merchandise here involved, called by the plaintiff philosophical apparatus and instruments, it is sufficient to say that these were taxed by the government under a provision of the tariff laws which was supposed by the customs officers to apply in the case, and that unless the plaintiff's contention here is right,—that they are to be denominated philosophical apparatus and instruments, and therefore fall within the provisions of the statute invoked by the plaintiff intended to cover the case of philosophical apparatus and instruments,—the assessment and collection of revenue, on the part of the government, was correct.   Congress has subjected philosophical apparatus and instruments to a duty of 35 per cent.   These articles of merchandise were, by the government, subjected to a duty of 45 per cent.   What did congress mean by the terms philosophical apparatus and instruments?   You will observe that these are terms of class denomination, every member of this class, of philosophical apparatus or instruments, has its individual name. Congress did not undertake in providing for the levy of a duty upon philosophical apparatus and instruments to designate the different members of the class by name, but used a class designation.   If in that branch of commerce to which these articles belong, they have a trade designation, and that designation is such as congress has here employed, —philosophical apparatus or instruments,—then it makes no difference whether we think that designation is founded in reason, or is wise or is unwise, we are required to infer that congress intended to describe these articles when it used the terms.   Congress is supposed, in the tariff laws, to use commercial terms in designating articles for assessment; to apply the names by which they are known, (not to the public at large or to lexicographers,) but to merchants who deal in them.

The first question, therefore, is: does the evidence show that these articles are known and classified in commerce, (that branch of trade to which they belong, by those who deal in them,) as philosophical instruments.   I do not mean by those who buy a single article; because they know it probably by its individual particular designation, but those who deal in the class.   Does the evidence show that they are known and classified by such persons as philosophical instruments?   If it does there is an end of this case.   I repeat, it is unimportant whether the classification is a wise or an unwise one, whether it is based on reason or not, if there is such a classification of the articles by the trade, such a designation of the class in the branch of commerce to which they be-

long, that governs. Congress meant to use the term in the sense in which those who deal in these articles understood it. Does the evidence satisfy you that these articles are so classified and known? The witnesses called by the plaintiff, and the government, were all very intelligent men, are all highly reputable, and there is nothing in their testimony to justify a suspicion that they do not testify truthfully, according to their understanding. All the witnesses called by the plaintiff to whom the question was put, testified, in the first instance, that the articles are so classified, so dealt in, so bought and sold by the trade. Of course when an individual calls at an establishment and asks for a microscope, he does not ask for a philosophical instrument. He then designates the article by its individual name, not by its class denomination. But the witnesses say that by all who deal in these articles as a class of merchandise, they are known as philosophical instruments, so classed, bought and sold. If that is true, it disposes of this question, without more. Is it true? These witnesses were cross-examined, and you will say how far their statements, on examination in chief, were shaken. It is for you to judge. One witness, Mr. Walmsley, was called on the other side, (also a very intelligent and apparently a very respectable man, no doubt worthy of credit,) who tells you that he did not so understand; that his understanding of the trade designation was not such as the plaintiff's witnesses state. What else is there bearing on the subject? The fact that these various items or articles, when called for individually, and specified, are not called philosophical instruments, is, as before stated, of no consequence. It tends to prove nothing. The catalogue of the plaintiff is before you, and is worthy of your consideration.

The plaintiff has divided up the various articles in his store into different classes; some of them, which may be said to be emphatically philosophical instruments, he puts in a department by themselves, and calls philosophical instruments. Others he puts in a class and calls them optical instruments, others mathematical instruments, etc. Does this show that he as a merchant, himself largely engaged in this trade, does not regard all these articles as philosophical apparatus or philosophical instruments? You must judge. Would it be possible for him to conduct his business without doing as he does in this respect? Not only does his convenience require it, but do or do not his necessities demand that he should do this. Would it be possible for him to find, in those who ordinarily accept services under another, one man who would be competent to take charge of all the business of that establishment? It is for you to say. One man may understand the instruments which more especially and distinctly, from their construction, are known as philosophical instruments. Another may be especially educated as respects optical instruments or mathematical instruments, but would it be reasonable to expect that a proprietor could find a man to go into such an establishment who would be sufficiently qualified by his training to take charge of the entire establishment? Could he point out to his customers without confusion what was wanted without some such

refinement upon the classification? It is for you to judge what value this testimony pointed to by the defendant should have. Mr. Fox tells you why this is done. He tells you it is a necessity in the transaction of his business. You will say from the evidence whether or not these articles claimed by the plaintiff to be philosophical apparatus, or philosophical instruments, have that trade designation. If they have you will decide this branch of the case for the plaintiff. I do not hesitate to say to you, although the question is for you, that in the judgment of the court the weight of the evidence is with the plaintiff as respects this branch. You, however, will consider it carefully and deliberately, and decide according to your judgment of the evidence. If you do not find the articles have such a trade designation as I have stated, then it will be necessary for you to take them up separately and say whether any of them, and if any, which of them, are philosophical instruments, according to the meaning of the term philosophical apparatus and philosophical instruments as employed in common speech, for it is a rule of law that where, in a tariff act, the terms used are not shown to be terms of commerce or trade, they must have the interpretation which is given them, or the meaning which is attributed to them, in common speech. In the absence of testimony governing the subject, it is the duty of the court to say to you what is the meaning of those words in common speech, supposing them not to be terms of trade. In that respect I adopt the view of the plaintiff.

I instruct you as asked to do in the plaintiff's third point, that if you find the name philosophical apparatus or instruments is not a trade term, (as I have explained,) then it is to be understood as used by congress in the ordinary signification of the word, and in that event, you will find the term to include such instruments as are designed to illustrate or utilize certain laws of natural philosophy, and which require for their manufacture or use special knowledge of those laws. Thus, you observe, if you do not find the articles to be denominated or classified by commerce as philosophical apparatus or philosophical instruments, then you must determine, according to the definition of them given you, whether any of them are, (and if so, which of them,) according to common speech, philosophical apparatus or philosophical instruments. That will be a difficult question, if you reach it. I need not dwell on the subject; I could not aid you by doing so; and I will therefore dismiss the first class of articles involved.

The second class consists of the plates or disks of glass for use in the manufacture of optical instruments. They were assessed by the government and tax collected upon them as articles of glass cut, engraved, etc.; and were properly so assessed unless they are, as the plaintiff claims, plates or disks for use in the manufacture of optical instruments unwrought. There is no controversy in the testimony respecting the character of these articles of glass. They are before us; they show for themselves. The testimony of the plaintiff and his witnesses and that of the defendant's witnesses is precisely the same. They were originally disks or glass plates; glass unwrought, but when imported to this country they

were not unwrought; work had been put upon them. Not only had they been wrought, but they had been wrought to such an extent as to change their character and proper denomination. They were no longer plates or disks of glass in the ordinary sense, but they were lenses. They had been manufactured until they were perfect lenses. They still required to be fitted to the case; only however for the purpose of being held and adjusted to the eye. They were lenses as perfect, so far as the use of a lense is concerned, as after being trimmed and fitted to the case. If held to the eye by the fingers they would answer all the purposes of a lense. The statute did not require that they should be so far wrought as to change their nature and designation, to subject them to duty. They are to be admitted duty free, when free of any material work; they should not be wrought to any extent, the object of the statute being to protect the laborers engaged in that branch of art in this country. I therefore feel no hesitation in saying to you, that as respects these articles, the plaintiff cannot recover. The assessment is right.

The third class consists of the glass slides for microscopes. These slides are window glass; nothing else; they have been taxed as cut glass. They are, in the judgment of the court, not cut glass. They have not been cut in any other sense than for diminishing the size. Window glass comes in at a certain rate. The plaintiff claims that this is window glass. All window glass that comes in is cut more or less. This before us may be cut into smaller pieces, but that is the only difference between it and the ordinary window glass. The plaintiff is right, in the judgment of the court, respecting this, and the government must be charged with the difference between the tax on window glass and the tax on glass cut or manufactured. Cut glass means glass cut into shape. That disposes, so far as the court is concerned, of all there is in controversy in this case.

There is a photographic glass here, stamped, painted or printed, (call it by any name you will,) which has been taxed as printed glass. In the judgment of the court, it is properly taxed. Indeed the plaintiff has abandoned his claim on this count. The globes have also ceased to be a matter of controversy. The plaintiff claimed that they were manufactures of paper, and liable to be taxed only to the extent that congress has taxed paper. The government taxed them as manufactures of brass, or partly of brass. The government now concedes that it was a mistake to so tax them; that they should have been taxed as *papier-mache;* and the plaintiff admits that he was wrong in his classification of them. They do bear a similarity to a map. They are intended, to some extent, for the purposes of a map, but they are not a map and they are not made of paper, but of *papier-mache.* They have also dropped out of the case. They should be taxed as manufactures of *papier-mache,* as the parties agree.

The district attorney has asked me to charge you:

"(1) The words philosophical apparatus in the tariff act comprise such goods, wares and merchandise as are principally and generally employed in institutions of learning in the demonstration of natural laws or by the student or scientist in experimental research."

I cannot do so.

"(2) The words 'philosophical apparatus' do not comprise however all apparatus which may be constructed or operated in accordance with natural laws and which may be termed scientific."

I cannot do. so.

"(3) If the importations in question are not mainly and principally designed and used for the demonstration in institutions of learning of natural laws or by the student in experimental research, but are mainly and principally used for practical and industrial purposes, then they are not philosophical apparatus within the meaning of congress and dutiable as such."

I cannot do so.

"(4) The fact that any or all of these importations are or may be used in institutions of learning for the demonstration of natural laws or by the student in experimental research does not *per se* make them dutiable as philosophical apparatus, and they are not so dutiable if their predominant uses are practical and industrial."

I cannot do so.

"(5) If any or all of these importations are mainly and principally employed as the tools or implements of trade by men engaged in industrial pursuits or by men for practical purposes of every-day life then they are not dutiable as philosophical apparatus."

I cannot do so.

"(10) Unless the articles in question are glass, are glass-plate or disks unwrought, and commercially known as such, paragraph 708 of the act of March 31, 1883, has no application to these importations.

"(11) That the term 'cut' in section T. I. 135, does not mean the glass cut to size, but that certain work has been done on *surface* of same to produce the form or the property of the glass."

These points apply, I think, to the disks, and so understood, are affirmed.

"(25) If the jury believe that the importations in question are not commercially known as common window glass and bought, sold and used as such and adaptable for that purpose, but are manufactures of glass, they are dutiable at forty-five per cent. *ad valorem*."

I disaffirm this point.

The plaintiff has asked the court to say:

"(1) If there is a class of articles, which have become grouped together in trade under the general name of philosophical instruments, and are, as a class, known and dealt in under that name, then your verdict should be for the plaintiff for the excess of duty above thirty-five per cent. on all articles which you shall find were included in that class."

I have virtually said so, and I affirm the point.

"(2) The facts that the individual articles of this class are each known by a separate trade name, and that some of them are occasionally sold by dealers in other-general classes of merchandise, do not necessarily take them out of the class of philosophical instruments."

I affirm this point, and I say further that it is of no consequence that the individual members of the class may be known by individual names. It is always so of classified articles. It is uniformly so.

"(3) If you should find that the name philosophical instruments is **not a** trade term, then it is to be understood as used by congress in the ordinary signification of the words, and would include such instruments as are designed to illustrate or utilize certain laws of natural philosophy, and which require for their design, manufacture or use some special knowledge of those laws. "

I affirm this point.

"(4) The word ' wrought ' in the tariff laws means that the articles have been manufactured into something else. The fact that the glass plates or disks, for use in the manufacture of optical instruments, have been ground and polished and advanced in the stages of manufacture does not change their classification so long as they remain glass plates or disks not completely finished as a part of any optical instrument."

This point has been disposed of.

"(5) Common window glass which has been subject to no other process of manufacture than cutting into sizes is dutiable under the provisions for common window glass under the tariff law, and the small pieces of window glass imported by plaintiffs to be made into microscope slides are, therefore, dutiable as common window glass."

This point has been disposed of.

Counsel on behalf of plaintiffs excepts to the refusal of the court to affirm the fourth and fifth points presented by him, relating to unwrought disks or plates of glass. The district attorney excepts to the answer of the court to the first, second, third, fourth, and fifth points presented by him.

The verdict was for plaintiffs for the amount claimed on the philosophical instruments, and the microscope slides.