[No. 4790. Decided April 14, 1904.]

## T. O. ABBOTT, *Appellant,* v. CHESTER THORNE *et al., Respondents.*[1]

APPEAL—REVIEW—POINT RAISED BY PREVAILING PARTY. Upon an appeal by the plaintiff in a case tried and determined on the merits, the prevailing party may raise the objection that the case cannot be maintained in any event, since it would be idle to order a new trial for error if the action does not lie.

MALICIOUS PROSECUTION — CIVIL ACTION WITHOUT ARREST OR SEIZURE OF PROPERTY. An action for the malicious prosecution of a civil suit without probable cause will not lie when there was no arrest of the person or seizure of property therein, and no special injury sustained which would not necessarily result in all like prosecutions.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered February 11, 1903, upon the verdict of a jury rendered for the defendants by direction of the court after a trial on the merits, dismissing an action for damages for malicious prosecution. Affirmed.

*Stiles & Doolittle,* for appellant.

*Bogle & Richardson,* and *Bates & Murray,* for respondents.

[1]Reported in 76 Pac. 302.

DUNBAR, J.—This is an action by appellant against the respondents for a conspiracy to maliciously prosecute. The action is based upon allegations set forth in the case entitled, "T. B. Deming, plaintiff, v. Pacific Investment Co., J. H. Easterday, T. O. Abbott, L. R. Wheeler, Commercial Investment Co., National Bank of Commerce of Tacoma, and M. J. Adams, defendants." This case came to this court under the title of, *"William H. Opie, as administrator, respondent, v. Pacific Investment Co. et al., appellants,"* reported in 26 Wash. 505, 67 Pac. 231, 56 L. R. A. 778; a judgment of reversal having been obtained in this court by the appellant in the case at bar, and the allegations which the appellant claims were malicious having been found by this court not to be true. The cause proceeded to trial, and upon the conclusion thereof the respondents requested the court for a peremptory instruction to the jury for a verdict in their behalf, which was granted. The ground upon which the motion was granted it is not necessary to discuss, under our view of subsequent questions, which are determinative of the case.

A great many questions are presented by the record and in the briefs of counsel, but preliminary to all others is the question whether or not this case can be maintained. It is insisted by the appellant that this question cannot be raised by the respondents, inasmuch as they prevailed in the court below; but it is too evident for discussion that it would be a foolish proceeding, on the part of this court, to reverse a case and send it back for a new trial, when it would finally have to be determined that the action would not lie; and the view we take of this question renders a discussion of the other proceedings involved unnecessary. On the main question, whether

an action for malicious prosecution will lie where there is no arrest of the person or attachment of the property, there is some conflict of authority, and it has been held by Judge Hanford, in *Wade v. National Bank of Commerce,* 114 Fed. 377, that such an action would lie. Also, in *McCormick Harvester Mach. Co. v. Willan,* 88 N. W. 497, 56 L. R. A. 338, a Nebraska case [63 Neb. 391], the contrary rule announced in *Rice v. Day,* 34 Neb. 100, 51 N. W. 464, was practically overruled.

The leading case sustaining this doctrine is *Kolka v. Jones,* 6 N. D. 461, 71 N. W. 558, 66 Am. St. Rep. 615, where the doctrine was announced that, for the malicious prosecution of a civil action without probable cause, plaintiff was answerable to the defendant, though the latter was not arrested nor his rights interfered with in any manner. This is a North Dakota case, and presents that view of the law very forcibly and clearly, and the conflicting cases are discussed with great precision and power. But, notwithstanding the able opinion in this case, we are forced to the conclusion, from an investigation of authorities and a consideration of the principles involved, that the contrary doctrine is well established, and that an action will not lie for the prosecution of a civil action with malice and without probable cause, when there has been no arrest of the person or attachment of the property of the defendant, and no special injury sustained, or injury which is not the necessary result in such suits. And this doctrine we think is sustained, not only by the overwhelming weight of numerical authority, but by the overwhelming weight of reason.

The right of free allegations in a pleading has always been considered privileged. Courts are instituted to grant relief to litigants, and are open to all who seek remedies

for injuries sustained; and unnecessary restraint, and fear of disastrous results in some succeeding litigation, ought not to hamper the litigant or intimidate him from fully and fearlessly presenting his case. If the charges prove to be unfounded, costs have been prescribed by the legislature as the measure of damages. Prior to the time when costs were allowed to the prevailing party, there was more reason for sustaining actions on the case; and, as a rule, the costs and expenses incident to an unsuccessful law suit will be sufficient to restrain actions which are founded purely on malice. While it is no doubt true that, in some instances, the peril of costs is not a sufficient restraint, and the recovery of costs is not an adequate compensation for the expenses and annoyances incident to the defense of a suit, yet all who indulge in litigation are necessarily subject to burdens the exact weight of which cannot be calculated in advance, and a rule must be established which, as a whole, is the most wholesome in its effects, and accords in the greatest degree with public policy. If the rule were established that an action could be maintained simply upon the failure of a plaintiff to substantiate the allegations of his complaint in the original action, litigation would become interminable, and the failure of one suit, instead of ending litigation, which is the policy of the law, would be a precursor of another; and, if that suit perchance should fail, it would establish the basis for still another. For the failure to establish the fact alleged that an allegation in the original complaint was malicious, might well warrant the conclusion that the allegation in the second case, charging malice in the allegations of the first action, was malicious, and so on *ad infinitum.*

In *Wetmore v. Mellinger,* 64 Iowa 741, 18 N. W. 870,

52 Am. Rep. 465, it was held that no action would lie for the recovery of the damages sustained by the institution and prosecution of a civil action of malice, and without probable cause, when there had been no arrest of the person nor seizure of the property of the defendant, and no special injury sustained which would not necessarily result in all prosecutions for like causes of action. In that case, in the argument, it was said:

"If an action may be maintained against a plaintiff for the malicious prosecution of a suit without probable cause, why should not a right of action accrue against a defendant who defends without probable cause and with malice? The doctrine surely tends to discourage vexatious litigation, rather than to promote it."

It seems to us that there is much common sense in this observation, for the affirmative allegations of an answer are as liable to contain malicious statements as the affirmative allegations of a complaint; and the result would be, if the doctrine contended for were upheld to its logical conclusion, that the plaintiff in an action would be entitled to damages for the unsupported allegations of an answer; for there is as much publicity given to an answer in an action as there is to a complaint, and damages in one case would be just as liable to be incurred as in the other. The same rule is announced in *Smith v. Hintrager*, 67 Ia. 109, 24 N. W. 744, and in *McNamee v. Minke*, 49 Md. 122, where the court, in summing up an argument which holds that the action will not lie, says:

"Otherwise, parties would be constantly involved in litigation, trying over cases that may have failed, upon the mere allegation of false and malicious prosecution."

In *Mayer v. Walter*, 64 Pa. St. 283, it is said:

"But for this rule, the termination of one suit would be, in a multitude of instances, the signal for the insti-

tution of another, in which the parties would be reversed; and the process might be renewed indefinitely, in contravention of the maxim *interest reipublicae ut sit finis litium."*

It was decided in *Bitz v. Meyer,* 40 N. J. L. 252, 29 Am. Rep. 233, that a civil action, in all its parts, is a claim of right, and is pursued only at the peril of costs, if not sustained, subject to the qualifications that the defendant has been arrested without cause and deprived of his liberty, or made to suffer other special grievances. The same doctrine is specifically announced in: *Supreme Lodge etc. v. Unverzagt,* 76 Md. 104, 24 Atl. 323; *Potts v. Imlay,* 4 N. J. L. 330, 7 Am. Dec. 603; *Terry v. Davis,* 114 N. C. 27, 18 S. E. 943; *Mitchell v. Southwestern Railroad,* 75 Ga. 398; *Gorton v. Brown,* 27 Ill. 489, 81 Am. Dec. 245; *Smith v. Michigan Buggy Co.,* 175 Ill. 619, 51 N. E. 569, 67 Am. St. 242; *Cincinnati Daily Tribune Co. v. Bruck,* 61 Ohio St. 489, 56 N. E. 198, 76 Am. St. 433; *Ely v. Davis,* 111 N. C. 24, 15 S. E. 878; *Luby v. Bennett,* 111 Wis. 613, 87 N. W. 804, 56 L. R. A. 261; 87 Am. St. 897; *Tunstall v. Clifton* (Tex. Civ. App.), 49 S. W. 244; *McCord-Collins Co. v. Levi,* 21 Tex. Civ. App. 109, 50 S. W. 606; and many other cases, a tabulated statement of which would not be of assistance.

But, in addition to outside authority, this court has spoken with no uncertain sound on this subject, and in a case brought by the parties to this action in *Abbott v. National Bank of Commerce,* 20 Wash. 552, 56 Pac. 376, it was held that allegations contained in pleadings filed in a court of competent jurisdiction are absolutely privileged, where they are relevant and pertinent to the cause, regardless of their falsity or maliciousness. In the dis-

cussion of this case it was said by the writer of the opinion, Judge Gordon:

"We think it requires no argument to demonstrate that the words complained of were pertinent and material to the cause, and the question to be determined is, were they absolutely privileged, regardless of whether they were true or false, used maliciously or in good faith? The doctrine of privileged communications rests upon public policy, 'which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford an immunity to the evil-disposed and malignant slanderer;' [citing *Bartlett v. Christhilf*, 69 Md. 219, 14 Atl. 518.] It cannot be doubted that it is a privilege liable to be abused, and its abuse may lead to great hardships; but to give legal sanction to such suits as the present would, we think, give rise to far greater hardships."

It is true that this was an action for libel, but the principle involved is exactly the same as is involved in this case, although the form of the action was slightly different. Also, in *Seattle Crockery Co. v. Haley*, 6 Wash. 302, 33 Pac. 650, 36 Am. St. 156, it was said by Judge Stiles, who wrote the opinion:

"While the issuance of an attachment may do injury to this mercantile character and credit of a debtor, it is, in that respect, not different from other judicial proceedings. If the allegations of the affidavit are in one case libelous, and tend to break down the confidence theretofore reposed in the defendant, they are no more so than would be a complaint in a suit for money obtained by alleged false pretenses. And so this kind of injury may be brought about as effectually where no property at all has been taken under the writ. The commencement of an ordinary suit upon a promissory note has fully as great a tendency to impair credit as any other proceeding, for the presumption is that a business man will take care of his notes at least, if he has any regard for his standing in the commercial world; and, if he cannot take care of

them so that he has to be sued, the inference most natur-
ally is that he is weak in resources, and, therefore, not
a safe person to credit. But the note may be forged, or
not due, or paid, or there may be counterclaims or good
defenses so that the suit is totally unjustifiable. But does
any one sue for damages to credit growing out of such
proceedings? Not at all, because they are privileged,
being proceedings in courts of justice. And so we think
this attachment proceeding, and all allegations of fraud
made herein, although they may injure the character,
reputation or credit of the defendant, are in the same way
privileged, and not to be recovered for."

It is said by the appellant that this case is not in point
because it was simply decisive of a measure of damages.
But the decision on the measure of damages was based
upon the theory that the allegations in the complaint were
privileged, and that no action would lie for that reason;
and it would certainly be inconsistent for this court to
hold that damages to reputation and character could be
recovered in an action where no attachment had issued,
and that they could not be recovered where the defend-
ant's property had been attached, as in the case of *Seattle
Crockery Co. v. Haley*, just discussed.

We think the principles announced by this court in the
cases just cited would preclude a recovery in this cause,
and we are not disposed to retreat from the positions
there taken. In this litigious age, when speculative law
suits are rapidly multiplying, we think that considera-
tions of sound public policy will not justify courts in an-
nouncing a doctrine which tends to encourage this char-
acter of litigation.

The judgment is affirmed.

FULLERTON, C. J., and HADLEY, MOUNT, and ANDERS,
JJ., concur.